PEOPLE ex rel. HAVEMEYER et al. v. PURDY et al., Commissioners of
Taxes and Assessments (six cases).

(Supreme Court, Special Term, Kings County.   September 23, 1915.)

1. TAXATION ⬤⟳493—ASSESSMENT—REVIEW.
    Under Laws 1911, c. 117, § 21a, providing that a total assessment only
    can be reviewed, that petitioners in a suit to review an assessment admit
    that the figures of the taxing officers are correct as far as the value of
    buildings are concerned does not constitute a request that the court re-
    view part of the assessment only.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 876–883; Dec.
    Dig. ⬤⟳493.]

2. TAXATION ⬤⟳493—ASSESSMENT—CORRECTION OF ASSESSMENT—PRESUMP-
    TIONS.
    The presumption is that an assessment levied by the taxing officers is
    regular, and it will not be disturbed, unless it clearly appears that in-
    justice has been done, to show which the burden is upon one attacking
    the assessment.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 876–883; Dec.
    Dig. ⬤⟳493.]

3. TAXATION ⬤⟳493—ASSESSMENT—CORRECTION—EVIDENCE.
    In a suit to correct an assessment of property in the vicinity of New
    York Harbor, evidence held to show that the assessment was excessive,
    and that the unit of value applied to it was higher than the unit fixed for
    similar adjoining property.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 876–883; Dec.
    Dig. ⬤⟳493.]

Suits by the People of the State of New York, on the relation of
Horace Havemeyer and others, copartners doing business under the
name and style of Havemeyer & Elder, against Lawson Purdy and
others as Commissioners of Taxes and Assessments of the City of New
York, to review an assessment.  Assessment corrected.

Henry F. Cochrane, of Brooklyn, for plaintiffs.
Ricordo M. de Acosta, Corp. Counsel, of New York City, for de-
fendants.

MANNING, J.   The relators bring these proceedings for the pur-
pose of reviewing certain valuations placed upon their property for
taxing purposes for the year 1914.   Six parcels of land are involved,
and the contention of the petitioners is that each and every one of
the plots have been overvalued, and that the assessments placed upon
the lands should be reduced by the sum of $348,000.   The owners
pleaded overvaluation, illegality, and inequality as the basis of their
grievance, but on the trial the issues of illegality and inequality were
withdrawn, and the only question left to the court was that of over-
valuation.

The relators concede that the assessments in question, so far as
*improvements* are concerned, are fair, and they are willing to accept
the valuations fixed by the taxing officers; but they protest the valu-
ations placed upon the real property, both upland and lands under
water.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] Upon the trial the relators offered no direct testimony as to the value of the improvements, and the point was then made by the respondents, for the city, and it is now urged in their brief, that the court cannot consider the assessment in part, that the assessment as a whole *only* can be reviewed, and hence that the proceedings should be dismissed as a matter of law. It is undoubtedly true that section 21a of chapter 117 of the Laws of 1911 contains the following language:

"*Assessment Rolls in Cities.* In all cities there shall be an additional column in the assessment roll before the column in which is set down the value of real property, and in such additional column there shall be set down the value of the land exclusive of buildings thereon. The *total assessment only can be reviewed.*"

Is the present instance the petitioners seek a court review of the *whole* assessment, and they do this by presenting witnesses and introducing testimony as to the alleged overvaluation of the lands; but at the same time, however, they adopt the figures of the taxing officers so far as the value of the buildings are concerned. I am inclined to the belief that a fair and reasonable reading and construction of the section in question permits this, and, in view of the fact that the court's attention has not been called to any controlling authority holding to the contrary, the motion to dismiss will be denied, and these writs will therefore be considered on their merits.

. The property affected consists of six separate parcels, all located within the five blocks of land extending from Kent avenue on the east to the pier head line in the East River on the west, and between North Third and North Tenth streets, in what is known as the Williamsburg or Hunterspoint section of Brooklyn. Most of the property in question has been owned by the relators, or by those whose interests were closely allied with them, for many years past, and consisting, as it does, of both upland and water front, the property was mainly devoted to the sugar industry, including the refining and shipping thereof. There was also in use upon the property certain terminal facilities, which were used by the owners thereof, and also by merchants in the vicinity, for the purpose of receiving and shipping merchandise, and for a considerable time the plant was a very profitable one. The immediate neighborhood was largely given over to manufacturing industries of various kinds, and from the use by the general public of these shipping facilities the relators enjoyed a very handsome return upon their investment. But thereafter, and beginning with the year 1907, a marked change took place in the community, which the relators say had a very disastrous effect upon their property, and as a consequence they claim that the lands in question have depreciated in value, and that in making the assessments for the year 1914 the taxing officers have overvalued the lands to the extent of $348,000.

As I recall and read the testimony in these cases, there is merit in the relator's complaint. This fact is borne out by the witnesses on both sides, namely, that for several years past the section of the city in which the lands in question are located has been particularly affected

by the general economic depression which has spread throughout the
entire municipality, and the erection of new buildings in the vicinity
has practically ceased. Trades and businesses which were located
there have gone elsewhere, and shipping and terminal plants have
sprung up along other parts of the city's water front. The sugar re-
fineries have abandoned their plants, and the relators have been com-
pelled to find other uses for their lands, thus suffering a loss in the
income from their property. It is true the land is there, and that pos-
sibly a bright future may be in store for those who own it; but that
there has been a very serious decline and depression no one can deny,
which decline is by no means solely caused by the loss of income,
and the relators are frank enough to state that they do not seek a
reduction for that reason alone. It is a fact that during this period
of depression the relators have made certain purchases of real estate
in the immediate neighborhood at prices which the respondents urge
show a high unit of value, sufficient at least to justify the assessments
levied; but when the particular facts concerning these isolated pur-
chases are brought to light, the transactions are not in the least incon-
sistent with the position assumed by the relators. Sometimes a pur-
chaser is obliged to pay more than the fair market value of a piece
of land, especially if it forms a key to what he already owns, or he
may be compelled to pay an exorbitant price to protect his previous
holdings.

[2] The problem involved in a proceeding of this kind is a very
difficult one for a court to solve. The legal presumption is in favor
of the regularity of the assessment, and this is as it should be. The
taxing officials are sworn officers of the law and are presumed to do
their duty, and their determination should not be disturbed, unless it
shall clearly appear that some injustice has been done. The relator
in a case like this has the burden of proof, and by his showing it
should appear that a proper case is made out before the court should
make an assessment different from what has already been determined
by those charged with that high and important duty.

[3] In this particular case I am inclined to believe that the relators
have successfully borne the burden required of them. There is no
denying the fact that the relators' properties have been seriously
affected by the conditions mentioned, and yet while this state of
affairs was going on the assessed valuation of their properties were
increased very materially by the taxing officers during the period from
1909 to 1913, and this in the face of a dead real estate market. Such
increase of values, it seems to me, needs some explanation from the
taxing officers; but the court cannot recall any such explanation, at
least none that seemed reasonable. Again, it appears that the unit
of value applied to the relators' properties under water is higher than
the unit of value fixed for property of a similar character adjoining on
either side, north or south, and no good reason is shown for this
condition.

These cases, like all others of their kind, present perhaps one of the
most difficult problems which courts are called upon to solve, namely,
what is the fair and reasonable value of water front property in the

vicinity of New York Harbor? There are no specific or well-defined rules or precedents to follow. The situation resolves itself into a question of what property of this character is worth, either a high or low price, depending largely upon the use to which it can be devoted and the demands of commerce. There are very few actual sales to guide one as a matter of comparison, and hence the court is obliged to determine values largely upon the testimony of real estate experts, which to say the least is not by any means the most satisfactory way of fixing values. This is said with no disrespect whatsoever to men who are real estate experts, and who devote their time and talents to a study of the real estate market and its fluctuations; but the trouble is that, while both sets of experts undoubtedly act in good faith, the result is that the city's valuations are high and the property owners' are low, and so the court is left to do the best it can under the circumstances, and in deciding the given case fix what it considers as a just, fair, and reasonable figure. Both sets of experts in this case are reputable men; but, as they disagree with each other, I cannot agree with either of them, though I have given due consideration to their evidence, and hence will fix my own values upon these properties, which are as follows:

Block 2301, lot 1 ......................................$365,000
Block 2308, lot 1 ...................................... 330,000
Block 2316, lot 6 ...................................... 310,000
Block 2332, lot 1 ...................................... 325,000
Block 2348, lot 1 ...................................... 170,000
Block 2348, lot 6 ...................................... 150,000   $1,650,000

Costs pursuant to the statute are awarded to the relators.